IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-02296-MSK

LARRY D. ADAMS,

      Petitioner,

v.

ARISTEDES ZAVARAS, Executive Director, Colorado Department of Corrections, and
JOHN SUTHERS, Attorney General of the State of Colorado,

      Respondents.

---

**ORDER ON PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO
28 U.S.C. § 2254**

---

    This matter comes before the Court on the Petitioner Larry D. Adams' Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (# **1**)[1], which the Respondents answered (# **16**). The Petitioner filed a traverse (# **23**). Having considered the same, along with the pertinent portions of the State Court record (# **29**), the Court

    **FINDS** and **CONCLUDES** that:

### I. Jurisdiction

    The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 2254 and 1331.

---

[1]Because the Petitioner appears *pro se*, the Court construes his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, the Court does not serve as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## II. Background

On January 28, 1993, the Petitioner was convicted of first degree murder for bludgeoning his girlfriend to death.[2]  He was sentenced to life in prison without the possibility of parole.

The Petitioner filed a direct appeal on January 23, 1995 to the Colorado Court of Appeals which affirmed his conviction on March 21, 1996.  *See People v. Adams*, No. 93CA0425 (Colo. App. March 21, 1996) (unpublished decision) (Answer at Exhibit A, p. 8-17) ("*Adams I*").  He then filed a petition for writ of certiorari with the Colorado Supreme Court, which was denied on November 12, 1996.

In post-conviction proceedings, the Petitioner challenged the validity of his conviction and the trial court conducted extensive evidentiary hearings addressing, among other things, claims that the Petitioner's representation had been ineffective and that there had been jury misconduct.  The trial court denied relief in 2006.  The Petitioner appealed, and on June 12, 2008, the Colorado Court of Appeals affirmed the trial court's denial.  *See People v. Adams*, No. 06CA1592 (Colo. App. June 12, 2008) (unpublished decision) (Answer at Exhibit B, p. 25-36) ("*Adams II*").  The Petitioner filed a petition for writ of certiorari with the Colorado Supreme Court, which was denied on October 6, 2008.

The Petitioner commenced this action on October 23, 2008, alleging that: (1) he was denied a fair trial because evidence of prior bad acts was admitted; (2) the admission of certain documentary evidence violated his right to confront the witnesses against him; (3) his representation by trial counsel was ineffective because counsel failed to investigate and present a

---

[2]This general introductory background is largely taken from the statement of facts in the Petitioner's opening brief on direct appeal.  Answer at Exhibit A, p. 31-33.

theory of defense based upon the Petitioner's ingestion of PCP prior to the murder; (4) his trial representation was ineffective because counsel failed to collaterally attack a prior conviction and erroneously advised him that the prosecutor could impeach him with the prior conviction if he elected to testify at trial; and (5) his constitutional right to a fair trial was violated by juror misconduct during the deliberations.

On October 29, 2008, Magistrate Judge Boland ordered the Respondents to file a pre-answer response limited to addressing the issues of timeliness and/or exhaustion of state court remedies. The Respondents filed a pre-answer response on November 18, 2008. Respondents asserted that the Petitioner had failed to exhaust his first claim in the state court, and that this claim was procedurally defaulted. The Petitioner did not reply.

On December 18, 2008, Senior Judge Weinshienk entered an order dismissing the Petitioner's first claim as procedurally defaulted. Nonetheless, finding that the remainder of the Petitioner's claims had been exhausted in the state courts, she ordered Claims Two through Five assigned for determination on their merits.

### III. Legal Standard

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. Mcguire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 . . . . [it] does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted). The exhaustion of state remedies requirement in federal habeas cases dictates that a state prisoner must "give the

state courts a full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Because the Petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), that statute governs the Court's review. *Cannon v. Mullin,* 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson,* 173 F.3d 1278, 1282 n. 1 (10th Cir. 1999)). Under the AEDPA, a district court may only consider a habeas petition when the petitioner argues that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as

opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id*. at 1018. If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id*.

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [the court's] independent review of the record and pertinent federal law persuades [it] that [the] result contravenes or unreasonably

6

applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. at 1178. "[T]his 'independent review' should be distinguished from a full *de novo* review of the petitioner's claims." *Id*.

## IV. Analysis

### A. Claim Two

In his second claim, the Petitioner asserts that the admission of evidence of his prior misdemeanor conviction and of a permanent restraining order against him at trial violated his Sixth Amendment right to confrontation. Petition at 7-8.

The state court held a pre-trial hearing on December 4, 1992, to determine whether records of previous criminal proceedings between the victim and the petitioner, including a summons and a permanent restraining order, were admissible pursuant to Colorado Rule of Evidence 404(b).[3] The trial court evaluated the evidence under the factors set forth in *People v. Spoto*, 793 P.2d 1314 (Colo. 1990), and found the following:

> First, we must ask whether the proffered evidence relates to a material fact, i.e., a fact "that is of consequence to the determination of this action." And to offer all these prior assaults by this Defendant against this victim is a fact of consequence to the determination of the action. The next factor, "Is the evidence logically relevant, i.e., does it have 'any tendency to make the existence of [the material fact] more probable or less probable that it would be without the evidence?'" And certainly it meets that test when you're offering it to show motive, preparation, plan, knowledge, absence of mistake.

---

[3]Colorado Rule of Evidence 404(b) provides that:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The next factor, "We then must determine whether the logical relevance is independent of the intermediate inference, prohibited by 404(b), that the defendant has a bad character, which would then be employed to suggest the probability that the defendant committed the crime charged because of the likelihood that he acted in conformity with his bad character." If you were talking about assault on some other individual, it might be offering the evidence to show he has a bad character. This is assault against this victim in showing that he acted not in the same sense of a bad character, but as an individual grudge, ill will, malice as to this one individual who is the victim.

And the last factor is "whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." And considering all the factors, considering the time frame of these assaults, the Court does feel that the probative value would outweigh any unfair prejudice. So the prior assault will be admissible.

As to the proof of the prior assaults, though, I think there has to be some modification or some limitation of what the District Attorney is offering. First, as to the misdemeanor assault, the Court will allow the General Sessions Complaint. The back of that shows the plea and sentence in that case . . . .

The temporary restraining order, the complaint, the other pleadings leading up to the permanent restraining order will not be admissible, but the permanent order is admissible. It does show there was in fact an order of the court that this Defendant should not be going anywhere near the victim.

Trial Court Transcript, Vol. 2 at p. 59-61.

Although no confrontation challenge to this evidence was made at trial, the Petitioner then raised a violation of his confrontation right on appeal. The Colorado Court of Appeals considered this issue, and determined:

Next, defendant argues that the trial court erred in admitting a summons from a previous county court case in which he had been charged with and convicted of disturbing the peace and assault on the victim, and in admitting a copy of a permanent restraining order entered against defendant that contained a conclusion by the court that domestic abuse had occurred and was likely to occur again. We find no error.

The summons demonstrated that the complainant was the victim, and on its reverse side it shows that defendant pleaded no contest to one of the charges.

Further, it shows that defendant was sentenced to probation with a requirement for domestic violence counseling, and that his probation was later revoked.

. . . .

[D]efendant argues for the first time on appeal that admission of the court documents evidencing the history of domestic strife in his relationship with the victim violated his right to confrontation. We disagree.

As before, because this issue was not raised in the trial court, our review is limited to determining whether the trial court committed plain error in admitting the evidence. *People v. Kruse*, 839 P.2d 1 (Colo. 1992).

In *People v. Dement*, 661 P.2d 675 (Colo. 1983), the supreme court adopted the two part analysis contained in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) for resolving confrontation clause claims.

First, because the confrontation clause reflects a preference for face-to-face accusation, a rule of necessity applies, placing a burden on the prosecution either to produce the hearsay declarant for cross-examination or to demonstrate the witness' unavailability.

Second, when the prosecution has established the unavailability of the hearsay declarant, only evidence bearing sufficient indicia of reliability is admissible. However, reliability of evidence falling within a firmly-rooted hearsay exception resting upon solid foundation may be inferred. *People v. Green*, 884 P.2d 339 (Colo. App. 1994).

Here, the victim's death clearly rendered her unavailable. And, to the extent that defendant contends that the "declarants" here were court personnel, he nevertheless fails to identify any specific, available declarants concerning whom trial confrontation would have had any utility. *See People v. Green, supra* (lack of utility of confrontation can satisfy or excuse the "unavailability" requirement).

As to the second prong of the test, the official public records exceptions to the hearsay rule set forth in CRE 803(6) and CRE 803(8), in our view, are firmly rooted hearsay exceptions that rest upon solid foundations; hence, reliability may be inferred. *See People v. Tenorio*, 197 Colo. 137, 590 P.2d 952 (Colo. 1979) (no confrontation clause violation when copies of official public records admitted under hearsay exception).

Here, the prosecution properly established the requisite foundation for admission of the court records under CRE 803(6) and CRE 803(8) and

"unavailability" in the constitutional sense was proven. Thus, the admission of
these documents was not erroneous, let alone plainly erroneous.

Answer at Exhibit A, p. 14-16.

The Confrontation Clause guarantees an accused the right "to be confronted with the

witnesses against him." U.S. Const. amend. VI. "The main and essential purpose of

confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v.

Alaska*, 415 U.S. 308, 315-16 (1974) (internal quotation marks omitted). A defendant's right to

confrontation, however, is not absolute. *See Lilly v. Virginia*, 527 U.S. 116, 123-24 (1999); *Ohio

v. Roberts*, 448 U.S. 56, 65-66 (1980). At the time of the Petitioner's conviction[4], federal law

recognized that a confrontational right was not abridged by the admission of hearsay evidence if

the statement fell within a "firmly rooted exception" to the hearsay rule, or if the statement was

otherwise attended by "particularized guarantees of trustworthiness." *See Stevens v. Ortiz*, 465

F.3d 1229, 1236 (10th Cir. 2006) (citing *Ohio*, 448 U.S. at 65). Under *Roberts*, an out-of-court

statement is admissible if the prosecution demonstrates both the unavailability of the declarant

and that the out-of-court statement has an "indicia of reliability." *Roberts*, 448 U.S. at 66; *see

also Lilly*, 527 U.S. at 124-25. The Supreme Court has renounced the application of a

"mechanical test" to determine whether a given statement had sufficient indicia of reliability or

---

[4]Although in *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court tightened the
analysis of Confrontation Clause claims by limiting the admissibility of testimonial hearsay, in habeas
proceedings, the Court considers the state of constitutional law as it existed at the time of the Petitioner's
conviction. *See Stevens*, 465 F.3d at 1235 n. 2. Moreover, it is well established that *Crawford* "does not
apply . . . retroactively to cases on collateral review." *Id.* (citing *Brown v. Uphoff*, 381 F.3d 1219, 1225
(10th Cir. 2004)); *see also Whorton v. Bockting*, 549 U.S. 406, 416-17 (2007) (finding that *Crawford* did
not announce a watershed rule, and therefore, could not be applied retroactively in a habeas proceeding
commenced by a defendant whose conviction was already final on direct review). The Petitioner's
conviction became final in 1996, after the Colorado Supreme Court denied certiorari with regard to his
direct appeal, long before *Crawford* was announced in March of 2004. Because *Crawford* does not
apply retroactively, it is inapplicable to his claim.

truthfulness, and the courts have "considerable leeway in their consideration of appropriate factors." *Idaho v. Wright*, 497 U.S. 805, 822 (1990).

Because the underlying record does not clearly identify the "out of court statement", for what "truth of the matter asserted" it was offered, it is difficult to ascertain who the declarant was. The Colorado Court of Appeals addressed this in two ways.

First, to the extent that the evidence was offered to reflect a statement of the victim, the appellate court conclude that her death rendered her unavailable. Answer at Exhibit A, p. 15. This conclusion is consistent with federal law. *See* Federal Rule of Evidence 804(a)(4) (noting that a witness' death renders her unavailable); *see also Dutton v. Evans*, 400 U.S. 74, 80 (1970) (recognizing the admissibility of "testimony of a deceased witness who has testified at a former trial").

To the extent that the statement was the record of what had occurred in the state court proceedings, the declarant would be the court employee who prepared the records at issue. As to such person, the Colorado Court of Appeals observed that there was no utility in the confrontation and therefore the unavailability requirement was satisfied or excused. Answer at Exhibit A, p. 15. This conclusion is consistent with federal law. In *Roberts*, the Supreme Court set forth "'a general approach' for determining when incriminating statements admissible under an exception to the hearsay rule also meet the requirements of the Confrontation Clause." *Wright,* 497 U.S. at 814 (quoting *Roberts*, 448 U.S. at 65). "First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case . . ., the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." *Id.*

Second, once the prosecution demonstrates that a witness is unavailable, "his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Id.* at 814-15. The *Roberts* court applied this analytical framework in holding that the admission of testimony given at a preliminary hearing, where the declarant failed to appear at trial despite the issuance of five separate subpoenas, did not violate the Confrontation Clause. *Roberts*, 448 U.S. at 67-77. The *Roberts* court found that the State had met its burden of demonstrating that the declarant was unavailable to testify at trial, and that her testimony from the preliminary hearing bore sufficient indicia of reliability, in particular because defense counsel was provided an adequate opportunity to cross-examine the declarant at the preliminary hearing. *Id.*

In *Roberts*, the court also opined that a demonstration of unavailability is not always required. It referred to *Dutton*, 400 U.S. 74, where it concluded that the utility of trial confrontation was so remote that the prosecution was not required to produce a seemingly available witness.[5] *Roberts*, 448 U.S. at 65 n. 7. Moreover, other courts have recognized that "[i]n light of the repetitive nature of business records, where the declarant typically would have little or no recollection or the contents of any particular document, the application of the availability requirement . . . is doubtful." *United States v. Johnson*, 971 F.2d 562, 572 (10th Cir.

---

[5]In *Dutton*, the Supreme Court held that the admission of an co-conspirator's spontaneous statement that indirectly incriminated the petitioner did not violate the Confrontation Clause. 400 U.S. at 74. The *Dutton* court emphasized unique aspects of the case, including the fact that twenty witnesses, including an eyewitness to the crime, appeared and testified for the prosecution providing the petitioner's counsel full opportunity to cross-examine them. The Court further noted that the co-conspirator spontaneously made the statement and "had no apparent reason to lie." *Id.* at 86-8. Accordingly, under those facts, the *Dutton* court concluded that there was indicia of reliability such that it was permissible for the evidence to go to the jury. *Id.* at 88-90.

1992) (citing *Manocchio v. Moran*, 919 F.2d 770, 775-76 (1st Cir. 1990)).  Here, the Court

agrees that the "utility of trial confrontation" with regard to the court personnel who prepared the

records at issue would indeed be "remote."  *Roberts*, 448 U.S. at 65 n. 7.  Accordingly, the

decision of the state appellate court with regard to the first prong of the *Roberts* test was not

contrary to or an unreasonable application or any clearly established Supreme Court precedent.

The second prong of the *Roberts* test requires a showing that the out-of-court statement

has an "indicia of reliability."  *Roberts*, 448 U.S. at 66.  Here, even though the trial court

determined the evidence was admissible pursuant to Colorado Rule of Evidence 404(b), the

Colorado Court of Appeals concluded that the court records would also be admissible under

Colorado Rules of Evidence 803(6) and (8)[6], Colorado's official public records exceptions to the

hearsay rule.  Answer at Exhibit A, p. 15.  The admissibility of a public record under Colorado

---

[6]Colorado Rule of Evidence 803(6), Records of regularly conducted activity, provides the following:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and it if was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 901(11), Rule 901(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.  The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Colorado Rule of Evidence 803(8), Public Records and Reports, provides the following:

> Unless the sources of information or other circumstances indicate lack of trustworthiness, records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law.

Rule of Evidence 803(3) and (8) is a state law evidence issue not cognizable in federal habeas corpus review. *See Estelle*, 502 U.S. at 67-68 (noting that "it is not the province of a federal habeas court to reexamine state-court determinations on state law-questions"). Moreover, at the time of the Petitioner's conviction, it was well established that court records fall into a firmly rooted hearsay exception and have sufficient indicia of reliability as to what occurred in the court proceedings. In *Roberts,* the Supreme Court recognized that "[t]he admission of evidence under a firmly rooted exception to the hearsay rule that does not require unavailability of a witness, such as the public records exception, does not violate the Confrontation Clause, and the public records recognition to the hearsay rule is firmly rooted." *Roberts*, 448 U.S. at 66 n. 8. Further, the *Roberts* court noted that, "[p]roperly administered, the business and public records exceptions would seem to be among the safest of the hearsay exceptions." *Id.*

Finally, even assuming that a Confrontation Clause violation occurred, any such error did not have a substantial and injurious effect or influence in determining the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 653 (1993) (recognizing that "Confrontation Clause violations are subject to harmless-error review"); *see also Woodward v. Williams*, 263 F.3d 1135, 1139 (10th Cir. 2001) (applying the harmless-error standard of *Brecht* to a Confrontation Clause violation). Here, the trial court gave the jury a limiting instruction regarding the use of the evidence at issue, advising the jury that it could only consider the court records "so far as you determine it important solely on the limited issue of motive, preparation, plan, knowledge, ill will between the parties, and/or absence of mistake. . . . You may not use it for any other purpose." Trial Court Transcript, Vol. 8 at 115-14. The jury is presumed to have followed this instruction. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987) (finding that the "rule that juries

are presumed to follow their instruction is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process."); *see also Weeks v. Angelone*, 528 U.S. 225, 226 (2000). The evidence of the Petitioner's guilt was strong, and the Petitioner did not contest, at trial, that he had murdered the victim. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (directing the courts to examine the overall strength of the State's case in reviewing for harmless error). Instead, the Petitioner presented a "heat of passion" theory of defense, arguing that he and the victim had been violently arguing prior to the murder. Answer at Ex. B, p. 27-32. The Petitioner does not demonstrate how the admission of the court records weakened or undermined his chosen theory of defense. Therefore, he has not established that the admission of this evidence had a substantial and injurious effect or influence in determining the jury's verdict. *See Brecht*, 507 U.S. at 653.

Accordingly, the Court cannot find that the appellate court's conclusion was contrary to or an unreasonable application of federal law. Therefore, based upon the above findings, the Petitioner is not entitled to federal habeas relief on his second claim.

## B. Claim Three

In his third claim, the Petitioner asserts that he was provided ineffective assistance of trial counsel because counsel failed to investigate and present a theory of defense based on the Petitioner's ingestion of PCP prior to the murder. Petition at 9-10. The Petitioner argues that counsel's failure to obtain the Petitioner's medical records "caused counsel's failure to pursue second degree murder in this case. Second degree murder would have been supported by the medical records because the presence of PCP would have disproved the Petitioner's deliberative

[sic] capabilities . . . which was the critical difference between first degree murder and second degree murder . . . ." Petition at 9.

In addressing this claim during the Petitioner's post-conviction appeal, the Colorado Court of Appeals noted the following:

> The postconviction court concluded, based on the testimony at the hearing, that defendant had failed to prove that his trial counsel was ineffective for failing to investigate, and pursue a defense based on, his use of PCP. The record supports the court's determination.
> . . . .
>
> Here, after arresting defendant, the police took him to the hospital because they were concerned he might have tried to kill himself by taking cough syrup. The emergency room report stated that defendant exhibited no symptoms and was released after being observed for several hours. However, the report also indicated that his urine tested positive for PCP. Defendant testified at the postconviction hearing that he was unaware of the PCP report until he learned of it during postconviction proceedings, and that he was not a user of PCP.
>
> Defendant's trial counsel, Pamela Mackey, requested the medical records from the hospital where defendant was taken. Mackey testified that she had no specific recollection of reviewing the records, that she "presumed" she knew about the reference to a positive urine screen for PCP, but that that knowledge did not affect her assessment of how to defend the case. She stated:
>
>> A voluntary intoxication defense was never seriously considered in this case, primarily because of the extrinsic witnesses who would have just shot it full of holes. I mean, there was no way to run a crazed PCP defense in this case. It wasn't going to work. And I also, you know, upon reflection, it doesn't make [the Petitioner] very sympathetic.
>
> Mackey testified that she chose instead to present a heat of passion defense based on defendant's response to his girlfriend's behavior.
>
> The criminal defense experts differed as to whether Mackey was ineffective in this regard. Defense expert Stephen Rench opined that the "only sound strategy" in defendant's case would have been to present the case as one involving second degree murder based on the effect of PCP on defendant's ability to deliberate. The prosecution's expert, Craig Truman, was of the opinion that counsel's choice of a heat of passion defense was reasonable under the

16

circumstances, and he noted that there was sufficient evidence of a highly provoking act to warrant an instruction on that defense.  Although Truman voiced some criticisms of Mackey's handling of the PCP-related issues, he did not believe that her representation fell below the *Strickland* standard for ineffective assistance.  According to Truman, defendant's demeanor in the emergency room and when Mackey first interviewed him would not have "tipped off" his lawyer that he was "under the influence of something at the time."  Truman also opined that voluntary intoxication in homicide cases was a "defense of last resort," and that it would have been a "tough sell" under the facts of this case.

This testimony supports the postconviction court's conclusion that trial counsel "made a reasonable, strategic decision in rejecting a defense based upon an extremely thin basis for voluntary intoxication, and instead choosing to proceed on perhaps an equally thin heat of passion theory of defense."  Mackey's decision not to investigate further or pursue a PCP defense was reasonable in light of her concerns - - which, according to his hearing testimony, were shared by Truman - - about the viability of such a defense, and in light of the evidence that defendant was acting rationally and in a manner consistent with deliberation both before and after the homicide.  *See Dunlap*, 173 P.3d at 1065 (strategic choices made after less than complete investigation are reasonable to the extent that, in counsel's reasonable professional judgment, further investigation is unnecessary).  Further, although the defense toxicology expert testified that a person under the influence of PCP would have been unable to act with deliberation, the postconviction court correctly noted that his testimony was "at direct odds" with the overwhelming evidence produced at trial that defendant was able to think logically, consider the consequences of his actions, and take "deliberative steps to harm the victim."

The record also supports the trial court's alternative conclusion that, even assuming Mackey's performance fell below the standard of care, defendant had failed to establish prejudice because there was "no reasonable probability that, but for his attorney's error, the result in his case would have been different."  As noted, extensive evidence of defendant's deliberation was presented at trial, and Mackey and Truman explained in detail at the postconviction hearing why, in their view, a defense based on PCP intoxication would not have succeeded.  Although Rench testified to the contrary, it was within the province of the trial court to decide which testimony was credible.

Answer at Ex. B, p. 27-32.

The Petitioner's right to effective assistance of counsel was clearly established at the

time of his trial.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  Under federal law, to establish that his trial counsel was ineffective, the Petitioner must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  *See id.* at 687-88.  In addition, "[j]udicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."  *Id.*  It is the Petitioner's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.  *See id.*  Under the prejudice prong, the Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  If the Petitioner fails to satisfy his burden with regard to either prong of the *Strickland* test, his ineffective assistance of counsel claim must be dismissed.  *See id.* at 697.  Whether the assistance of counsel is ineffective involves mixed questions of law and fact.  *See id.* at 698.

Strategic and tactical decisions of trial counsel are ordinarily shielded from charges of ineffectiveness.  *See Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir. 1995), *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n. 1 (10th Cir. 2001).  To rise to the level of  constitutional ineffectiveness, a decision by counsel must be objectively unreasonable.  *Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002).  If the decision was an an adequately informed strategic choice, there is a presumption that the decision was objectively

reasonable. *See United States v. Nguyen*, 413 F.3d 1170, 1181 (10th Cir. 2005) (citing *Bullock*, 297 F.3d at 1044).

Upon review of the trial court record, the Colorado Court of Appeals applied this standard and concluded that the trial court's findings that trial counsel "made a reasonable, strategic decision in rejecting a defense based upon an extremely thin basis for voluntary intoxication . . . ." were supported by the evidence. Answer at Ex. B, p. 30. Reviewing the same record, this Court reaches the same conclusion. Trial counsel clearly was aware of a possible intoxication defense, but made the strategic decision not to present this defense due to problems with the "viability of such a defense, and . . . evidence that defendant was acting rationally and in a manner consistent with deliberation both before and after the homicide." Answer at Ex. B, p. 31. The Court will not second guess this reasonable decision. *See Chandler v. United States*, 218 F.3d 1305, 1314 n. 15 (11th Cir. 2000) (finding that even if the record is incomplete or unclear about counsel's actions, it is still presumed that counsel exercised reasonable professional judgment).

The fact that the defense which the Petitioner's counsel chose to present at trial was unsuccessful does not prove ineffectiveness of counsel. *Id.* at 1314. It appears that trial counsel's decision not to present evidence related the Petitioner's ingestion of PCP was a difficult, but thoughtful tactical one. On this record, the Petitioner has failed to overcome the strong presumption that trial counsel's performance falls within the range of reasonable professional assistance in accordance with *Strickland.*

In light of all of the above, the Court cannot conclude that the appellate court's conclusion was contrary to or an unreasonable application of federal law. Accordingly, the Petitioner is not entitled to federal habeas relief on this claim.

### C.    Claim Four

In his fourth claim, the Petitioner asserts that his representation at trial was ineffective because his counsel: (a) failed to collaterally attack his prior conviction; and (b) erroneously advised him that the prosecutor could impeach him with that prior conviction if he elected to testify at trial. Petition at 11.

#### 1.    Claim 4(a)

In this claim, the Petitioner argues that,

> [A]t the time of trial, the petitioner's prior felony conviction was under appeal in the Colorado Court of Appeals, and after this trial was completed, the Colorado Court of Appeals reversed the prior conviction. The petitioner urged his trial counsel to collaterally attack or otherwise prevent the State from utilizing the conviction to impeach him.

Petition at 11.

He further argues that counsel advised him that she could not prevent the prosecution from using his prior conviction to impeach him because it had not yet been reversed on appeal, and that his counsel failed to anticipate that his prior conviction would be reversed. *Id.*

In addressing this claim during the Petitioner's post-conviction appeal, the Colorado Court of Appeals concluded as follows:

> Defendant could not show prejudice based on counsel's asserted failure to challenge the prior conviction. During the trial in this case, the victim's testimony from the prior menacing and assault trial was admitted under CRE 404(b) and read into the record. At that time, the prior conviction was pending on appeal. A division of this court subsequently reversed the felony menacing conviction but affirmed the conviction for third degree assault. *People v. Adams*,

867 P.2d 54, 57 (Colo. App. 1993).

On direct appeal in this case, the division rejected defendant's argument that admission of the victim's testimony from the prior trial was erroneous in light of the subsequent reversal of the felony menacing conviction. The division reasoned that the victim's prior testimony was admitted as "evidence of the previous behavior and not of the conviction," and that it was admissible because, as defendant conceded, the prosecution showed that the prior event had in fact occurred. *Adams I*, at 4. Thus, even if [trial counsel] had succeeded in attacking the prior conviction, the victim's testimony regarding defendant's abusive behavior would nevertheless had been admissible at trial.

Answer at Ex. B, p. 32-33.

The conclusion by the Colorado Court of Appeals that evidence of the Petitioner's other crime was admissible at trial under CRE 404(b) is a application of state evidence law, and as such, falls outside the review by this court. *See Estelle*, 502 U.S. at 67-68 (noting that "it is not the province of a federal habeas court to reexamine state-court determinations on state law-questions"). This Court returns to the *Strickland* analysis, which requires the Petitioner to establish prejudice. In this context, the Petitioner must establish that had his counsel asserted a challenge to admissibility of the prior conviction, the result would have been different. *Strickland*, 466 U.S. at 694.

The Petitioner has not established such prejudice. According to the record, the probative effect of the evidence was that the Petitioner had previously assaulted the victim, not that he had been convicted of a crime of assault. There is nothing to suggest that the prior conviction, as compared to the assault that the Defendant admitted, influenced the outcome in this matter. The decision of the appellate court was not contrary to, nor did it involve an unreasonable application of, *Strickland*. Accordingly, the Petitioner is not entitled to relief on claim 4(a).

### 2. Claim 4(b)

In the second portion of his fourth claim, the Petitioner asserts that he informed counsel of his desire to testify at trial, and that she advised him not to testify based on the fact that he had a prior conviction which could be used by the prosecution to impeach him. Petition at 11. He argues that "trial counsel's deficient performance prejudiced the Petitioner because his decision not to exercise his constitutional right to testify was based upon faulty advice from trial counsel, [because] the underlying conviction [would be] reversed." *Id.*

In addressing this claim during the Petitioner's post-conviction appeal, the Colorado Court of Appeals noted:

> Nor did defendant establish ineffective assistance based on counsel's advice that the prosecution would be able to impeach him with his prior felony conviction if he testified. The trial court gave defendant the same advice, and it was a correct statement of the law. *See People v. McNeely*, 68 P.3d 540, 543 (Colo. App. 2002) (conviction may be used to impeach credibility of witness during later proceeding even if appeal of that conviction is pending).

> Moreover, even if we were to assume that [trial counsel] should have challenged the prior conviction or sought to preclude its use for impeachment purposes, defendant did not show that he was prejudiced by her failure to do so. Defendant told the trial court, and explained again at the postconviction hearing, why he had decided not to testify. His explanations suggest that he chose not to testify for reasons other than concern about the prior conviction. In addition, there is no basis for concluding that defendant's testimony might have led the jury to acquit him of first degree murder.

Answer at Ex. B, p. 33-34.

The Colorado Court of Appeals' determination that counsel's and the trial court's admonishment to the Petitioner was a correct statement of Colorado law is not subject to review by this Court. *See Estelle*, 502 U.S. at 67-68 (noting that "it is not the province of a federal habeas court to reexamine state-court determinations on state law-questions"). However, assuming without determining that counsel's advice was inaccurate, the Court applies the

*Strickland* standard to decide whether prejudice has been shown.

The Petitioner argues that if he had testified, he would have "dispute[d] the alleged statements made against him by various prosecution witnesses." Petition at 11. The Petitioner provides no further information regarding the specifics of the testimony he allegedly would have given at trial, and fails to demonstrate how the alleged testimony would affected the jury's verdict. *See id.* Without more, the Petitioner cannot demonstrate that he was prejudiced by counsel's allegedly erroneous advice, because he has not established "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Accordingly, the Court finds and concludes that the decision of the appellate court did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*, and the Petitioner is not entitled to federal habeas relief for claim 4(b).

### D.     Claim Five

 In his fifth claim, the Petitioner asserts that he was denied his constitutional right to a fair trial due to juror misconduct. Petition at 12. He asserts that Juror D.C. "went to the library during trial to look up media regarding this case despite clear instructions prohibiting him from doing so." *Id.* He further argues that:

> Indicators of prejudice were present in the articles available at the time of trial: they all contained facts critical to the issue of the Petitioner's intent, they were all published by reputable and authoritative [sources], [D.C.] attempted to communicate the contents of the articles to other jurors prior to deliberations, and they all contained statements vilifying the Petitioner.
>
> *Id.*
>
> In addressing this claim during the Petitioner's post-conviction appeal, the Colorado

Court of Appeals affirmed the trial court's findings and conclusions following the post-conviction evidentiary hearing:

> Defendant also contends he was entitled to postconviction relief because one juror "viewed extraneous outside information" regarding his case during the trial. Again, we disagree.
>
> When assessing a claim of juror misconduct based on exposure to extraneous information, a court must determine (1) whether extraneous information was improperly before the jury, and (2) whether, based on an objective "typical juror" standard, use of that information posed the reasonable possibility of prejudice to the defendant. Answering the inquiry presents a mixed question of law and fact. Thus, an appellate court defers to the trial court's findings of historical fact if they are supported by competent evidence in the record, and it reviews the trial court's conclusions of law de novo. *People v. Harlan*, 109 P.3d 616, 624 (Colo. 2005).
>
> At the postconviction hearing here, two jurors testified that a third juror, D.C., told them he had gone to the library to do research on defendant's case. Neither recalled any conversation with D.C. about the substantive results of such research. D.C. testified that he went to the library, but he did not research the case because "we were told not to."
>
> Based on its assessment of the demeanor and credibility of the juror witnesses, the trial court concluded that D.C. "did not, in fact, obtain newspaper information relating to" defendant; that neither of the other jurors was influenced in any manner by anything they heard from D.C.; and that there was thus "not a reasonable possibility that the jury's verdict was affected by any improper information or influence." The trial court's findings of historical fact are supported by the record, and we agree with its conclusion that, on those findings, defendant did not establish juror misconduct.

Answer at Ex. B, p. 34-35.

The Supreme Court has repeatedly held that a jury's verdict "must be based upon the evidence developed at trial." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). The Supreme Court has explained that, under the Sixth and Fourteenth Amendments, "trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the

defendant's right of confrontation, of cross-examination, and of counsel." *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965). Thus, the Petitioner's right to have the jury consider only evidence presented at trial was clearly established at the time of his conviction.

However, in the context of federal habeas corpus review, relief for juror misconduct may only be granted where the alleged misconduct "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637; *see also Matthews v. Workman*, 577 F.3d 1175, 1181 (10th Cir. 2009) (applying *Brecht* in a habeas case involving juror misconduct). Whether juror misconduct prejudiced a defendant is a mixed question of law and fact. *See Vigil v. Zavaras*, 298 F.3d 935, 941 (10th Cir. 2002) (citing *Rodriguez v. Marshall*, 125 F.3d 739, 744 (9th Cir. 1997)).

Determinations of a factual issue made by a state court are presumed to be correct unless they are rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e). Indeed, the Supreme Court has noted that the trial court is in the best position to assess a juror's potential misconduct. *See Wainwright v. Witt*, 469 U.S. 412, 424-26 (1985).

Here, the Petitioner has not proffered any clear and convincing evidence to contradict the trial court's factual finding that Juror D.C. did not access any media information relating to the trial, and that he did not relay any substantive information to the other jurors. *See* 28 U.S.C. § 2254(e). The Petitioner requests that the Court reconsider and reweigh the evidence previously presented, and redetermine the credibility of the witnesses during the post-conviction hearing. That is not the function of a court engaging in federal habeas review. A federal habeas court may not impose its own judgment on an issue of credibility to overrule the decision of a court that had the opportunity to view the testimony first-hand. *See Bryan v. Gibson*, 276 F.3d 1163,

1171 (10th Cir. 2001), *opinion vacated in part on other grounds on reh'g en banc by Bryan v. Mullin*, 335 F.3d 1207 (10th Cir. 2003) (resolving factual issues depends on the factfinder's evaluation of the credibility and demeanor of witnesses). The AEDPA deference to state court findings pursuant to § 2254 includes deference to findings on credibility. *See Church v. Sullivan*, 942 F.2d 1501, 1516 (10th Cir. 1991).

This Court finds that the state appellate court's determination that no juror misconduct occurred based on the trial court's factual findings at the post-conviction hearing, was not unreasonable in light of the evidence presented, nor was it contrary to or an unreasonable application of any clearly established rule of federal law as determined by the United States Supreme Court. Accordingly, the Petitioner is not entitled to habeas relief on claim five.

Accordingly, **IT IS ORDERED**:

1. Petitioner Larry D. Adams' Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (# 1) is **DENIED.**

2. **No certificate of appealability will issue** because the Petitioner has not made a substantial showing of the denial of a constitutional right.

Dated this 9th day of September, 2010.

BY THE COURT:

_____

Marcia S. Krieger
United States District Judge